UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>ILIKEAD MEDIA INTERNATIONAL COMPANY LTD., et al.,<br><br>        Defendants. | Case No. 19-cv-07971-SK<br><br>**NOTICE OF QUESTIONS** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON NOVEMBER 8, 2021 AT 9:30 A.M. The Court intends to address the questions below at the hearing. The Court advises the parties that it will not accept written answers to these questions. However, the Court may determine that further briefing or supplemental evidence is required to support the motion for default judgment.

The parties shall be prepared to address the following questions at the hearing:

(1)    Facebook seeks $4,020,910 in damages – the amount Facebook claims that it lost from Defendants' deceptive advertising scheme. Facebook states that this amount is calculated from the out-of-pocket costs Facebook paid to Defendants' victims to reimburse and refund them for the unauthorized ads Defendants purchased using the victims' ad accounts and the amount of advertising Facebook provided but for which it was never paid. To demonstrate these damages, Facebook submits a declaration from Andrew Herter, who states that the loss in the amount of $4,020,910 "was determined by examining financial records associated with ads run on Facebook by an impacted user. The loss amount reflects refunds and

chargebacks in the amounts of approximately $1,621,260 and $1,322,136 respectively, to users whose ad accounts Defendants used for unauthorized ads. The remainder of losses suffered by Facebook resulted from Facebook's inability to collect payment for ads that had run on the platform as a result of Defendants' scheme."

    (a)    To whom did Facebook pay $1,621,260 and $1,322,136 and why?

    (b)    What amount does Facebook contend that that it incurred in losses by its inability to collect payment for Defendants' advertisements? How did Facebook calculate this amount?

(2)    Why is the money Facebook paid to Defendants' victims properly considered contractual damages Facebook suffered as a result of Defendants' violation of Facebook's Terms of Service, as opposed to tort damages caused by Defendants' fraudulent activity? Does Facebook have any additional authority to support its position that this amount constitutes damages incurred by Defendant's breach of contract?

(3)    Facebook also points to the same paragraph in Herter's declaration to support its assertion that Facebook suffered damages "stemming from the expenditure of resources to investigate and respond to Defendants' illegal conduct" but Herter does not discuss the costs incurred in investigating Defendants' conduct. How much did Facebook incur in expenses to investigate and/or respond to Defendants' conduct?

(4)    Does Facebook contend that the amount it paid to Defendants' victims constitutes damages under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, and/or the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502? If so, on what authority does Facebook rely?

(5)    Have Defendants continued to engage in the alleged misconduct after Facebook served them with the complaint or otherwise provided Defendants with notice of the alleged misconduct?

(a)     If so, could Facebook provide the Court with evidence of the notice and of Defendants' misconduct after such notice?

(b)     If not, on what facts does Facebook rely to support its contention that Defendants are likely to continue or repeat their misconduct in the absence of a permanent injunction?

**IT IS SO ORDERED**.

Dated: November 1, 2021



SALLIE KIM
United States Magistrate Judge